## WILLIAM WRIGHT *vs.* FRANCIS TUKEY.

The dedication of a highway to the public is to be proved, not by deed, but by matter *in pais*, consisting of the acts and accompanying declarations of the owners of the land alleged to be dedicated.

One who has sold and conveyed land, and, at the same time, taken a reconveyance of it to himself by way of mortgage, which is afterwards foreclosed, is to be deemed the owner so far as relates to a dedication thereof to the public as a highway, notwithstanding such conveyance.

Where acts are done by the owners of land, which manifest an intention on their part to dedicate it to the public as a highway, acts of appropriating money or labor to the making or repair of such way, by the town or city within which it is situated, manifest an intention on the part of such city or town to accept the dedication, and render the place so dedicated a complete highway, the obstruction of which is a public nuisance.

THIS was an action of trespass *quare clausum fregit,* for tearing down a fence belonging to the plaintiff, erected by him on land known as Broadway and G street, in that part of the city of Boston called South Boston.

The defendant pleaded the general issue, and specified in his defence, in addition to all matters of denial : —

1. That the close described in the plaintiff's declaration is and for many years has been a public street or way, *first,* by a regular laying out by the selectmen of the town of Boston, on the 27th of February, 1805 ; *second,* by a dedication to the public.

2. That the fence described in the plaintiff's declaration was an obstruction in a public street or way, and as such was a nuisance, which any person had a right to abate, and which the defendant, as the city marshal of the city of Boston, was in duty bound to remove.

The action was tried before *Colby,* J., in the court of common pleas.

The plaintiff derived his title to the premises in question from Jonathan Bird, who conveyed the same to William Scollay, by a deed dated December 6th, 1804, by whom the estate was reconveyed to Bird in mortgage by a deed of the same date. Possession of the mortgaged premises was taken by the executor of the mortgagee, on the 10th of February,

1810, for condition broken, and the mortgage was duly foreclosed. The premises were afterwards sold by order of court, and purchased by the widow of Bird, by whom the same were sold and conveyed to the plaintiff, by a deed dated the 4th of April, 1825. By this deed, a lot of land, described as containing one acre and thirty-five rods, and including the land on which the fences erected by the plaintiff were standing, when the alleged trespass was committed, was conveyed to the plaintiff. The deed contained a clause, "reserving to the city of Boston their right of streets in the premises aforesaid."

The plaintiff proved the erection in August, 1846, of the fences in question on the land thus conveyed to him, and their removal by the defendant, as set forth in the writ, and there rested his case.

The defendant, then, in order to show the laying out of the place in question as a highway, under the first branch of his specification, offered in evidence an act of the legislature, passed on the 6th of March, 1804, (*St.* 1803, *c.* 111,) to annex a part of Dorchester to Boston, together with a record of the proceedings of the selectmen of Boston, in the laying out of streets, &c., in pursuance of the provisions of that act.

By the third section of that act, the selectmen of Boston were authorized "to lay out such streets and lanes" in South Boston, "as in their judgment would be for the common benefit of the proprietors of the land, and of the town of Boston, a reasonable attention being paid to the wishes of the proprietors, provided only, that no damage or compensation shall be allowed to any proprietor for such streets and lanes, as may be laid out within twelve months from the passing of this act ; and provided also, that the town of Boston shall not be obliged to complete the streets laid out by their selectmen, pursuant to this act, sooner than they may deem it expedient to do so."

The material part of the record of the selectmen is as follows : —

Wright v. Tukey.

"Boston, ss.   At a meeting of the selectmen, February 27th, 1805.  Present Messrs. Bulfinch, Tilden, Tileston, Chapman, Wright, Porter, May, Oliver.

"In compliance with the directions in the third section of the act of the legislature of this commonwealth, entitled an act to set off the·north-east part of the town of Dorchester, and to annex the same to the town of Boston, the selectmen having viewed the land described in said act, and having conferred with the proprietors thereof, relative to laying out such streets and lanes through the said tract, as in their judgment may be for the common benefit of said proprietors and of the town of Boston, the selectmen have determined and agree to lay out the streets through the whole of the said tract, now called South Boston, according to a plan drawn by Matthew Withington, surveyor, dated October 4th, 1804, and signed by him, which plan is preserved among the records of the town of Boston."

The plaintiff objected to the introduction of this evidence, that it was not competent to establish a legal laying out of highways, &c., under the act, because it did not appear from the record of the proceedings, that there was any legal notice thereof given to the parties interested, or that there was any sufficient reason for the omission of such notice.

The judge sustained the objection, and ruled that the evidence was inadmissible to prove a laying out; but that it was admissible, in connection with other evidence, to prove a dedication; and the defendant thereupon proceeded with that branch of his defence.

There was much testimony introduced by the defendant to prove the dedication; and it was in evidence that Jonathan Bird, one of the proprietors of the land annexed to Boston, by the act above mentioned, was one of the most active in procuring the act to be passed; that he was much pleased with the annexation and the laying out of the streets; and that he was present with the surveyors, as were also the other proprietors, when the streets were laid out.   This evidence was objected to by the plaintiff.

It was also in evidence, that in December, 1834, an appropriation was made by the board of aldermen for grading streets at South Boston; that G street had been opened beyond the premises in question for between ten and sixteen years, and Broadway, in part, twenty or thirty years, and

Wright *v.* Tukey.

through the plaintiff's premises more than ten years; that, from 1836 to 1843, money was appropriated generally by the city government, for streets at South Boston, which was expended on particular streets, under the direction of committees, in the manner usually pursued in regard to the streets of the city.

In reference to this testimony, the presiding judge instructed the jury, "that, under the facts proved, if the city had begun to complete said streets, and had bestowed any labor upon any part of the same, the soil of which belonged to the plaintiff, (such labor would be evidence to show that they had begun to complete them,) it was unlawful for him to erect said fences afterwards, and the defendant was justified in taking them down; and that the passing of any vote of the city appropriating money for the streets of South Boston, and the expenditure of any part of said money by a city officer, or a committee intrusted with the expending of said money, on the premises in question, was the act of the city within the meaning of the charge."

The jury returned a verdict for the defendant; and the plaintiff thereupon alleged exceptions to the instructions above stated, and also to the admission of evidence of the parol assent of Jonathan Bird to the annexation and laying out of streets.

The chief justice, in giving the opinion of the court, alludes to other parts of the act of annexation, and to other acts connected therewith, which, being sufficiently stated in the opinion, are not here repeated.

The case was argued at the last March term, by *J. Bell* and *J. M. Bell*, for the plaintiff, and by *P. W. Chandler*, city solicitor, for the defendant.

SHAW, C. J. The present is an action of trespass *quare clausum fregit*, alleging an unlawful entry into the close of the plaintiff, and pulling down certain fences.

The defence is, that the plaintiff erected fences on and across two highways in South Boston, called Broadway and ȝ street; that these fences were an obstruction to the high-

25*

way, and nuisances; and that the defendant, as city marshal, removed them, as it was his duty to do. The plaintiff denies that the places where the fences were erected were highways.

The specification of defence states, that the defendant would contend, that the place in question was a public highway, first, by regular laying out ; and second, by dedication. Upon these issues the case was tried.

This is certainly a question of much interest and importance to the prosperity of that great section of the city. It is said, that these fences were put up by the plaintiff, with a view to this suit, in order to test the validity of the acts of the selectmen, done nearly half a century ago, in laying out highways over that whole peninsula. If this is so, it confirms the remark just made, as to the importance of the case ; and it is only to be regretted, that the case comes before this court upon points so meagre and technical, and embracing in so small a degree the merits of the question.

The judge having ruled at the trial that the proceedings of the selectmen of February 27th, 1805, were not a legal and valid laying out, for want of notice appearing upon the face of the record, went on with the trial of the cause, on the question of dedication.

The first exception of the plaintiff was taken to any proof of the acts and declarations of Jonathan Bird, a predecessor under whom the plaintiff claims.

If dedication can be proved at all, it is by matter *in pais*, and not by deed, and must consist of the acts and accompanying declarations of the owners of the land alleged to be dedicated. If this special dedication could be proved, it must be done by the acts of the owners of the land, in connection with the annexation of Dorchester Neck to Boston, and the proceedings incident thereto ; and this was effected by the act of annexation passed March 6th, 1804. Bird continued to be owner of the land, now owned by the plaintiff, till December, 1804. He then sold his estate to William Scollay, but immediately took back the same estate to hold in fee and in mortgage. Afterwards his executor entered for

condition broken, and he, or those claiming under him, foreclosed the mortgage, so that he or they came in of the old estate of the mortgagee. The fact, therefore, that Bird sold to Scollay, made no difference, and the facts show, that Bird was seized during the whole of the period in question, and was the absolute owner from the time of the annexation to the 6th of December, 1804. We think, therefore, that the proof of his acts was rightly admitted.

The next exception of the plaintiff was to the direction of the judge, that, under the facts proved, if the city had begun to complete the streets, and had bestowed any labor upon any part of them, the soil of which belonged to the plaintiff, it was unlawful for him to erect the fence afterwards, and the defendant was justified in tearing it down; and that the passing of any vote by the city, appropriating money for the streets of South Boston, and the expenditure of any part of the money so appropriated by a city officer, or by a committee intrusted with the expending of the money, on the premises in question, was the act of the city within the meaning of the instruction.

We can perceive no legal objection to this charge, though it does not appear to us to be of the importance attributed to it. It does not appear, that the judge was requested to direct what constituted a dedication, or if he gave any such direction, that any exception was taken to it. By the charge thus stated, therefore, we understand him as intending to say, that if the facts proved manifested an intention of the owners of the soil to dedicate it, these acts of appropriating money and labor manifested an intention on the part of the city to accept such dedication, and made the place in question a complete highway, so that the obstruction of it was a public nuisance. Probably, the occasion for this direction was this, that, although by the act of annexation, the selectmen were authorized to lay out streets through said tract, South Boston, still it was under this proviso, that the town should not be obliged to do so sooner than they might deem it expedient. It might therefore have been argued, that until the town or

city had either by vote or act done something to manifest an intent to complete any such street for public use, it would not be in all respects a highway, the obstruction of which was a public nuisance. In reference to such an argument, this direction was correct. The court are therefore of opinion, that these exceptions must be overruled.

In affirming the judgment of the court below, on these grounds, the court are unwilling to be understood as giving their sanction to the opinion of the judge who tried the cause, on another important question respecting the regularity and validity of the votes of the selectmen of the 27th of February, 1805, pursuant to the act of the legislature therein recited. When this evidence was offered to prove the due laying out of these streets, on objection being made, it was rejected, as not being a legal laying out under the act, be-cause no legal notice to those interested, nor any reason for not giving them such notice, appeared on the face of the proceedings.

In order to judge of these proceedings, it is necessary to consider the peculiar circumstances under which they took place, and the nature and character of the legislative authority, under which the acts of the selectmen were done. The question depends rather upon these than upon the general laws providing for the laying out of highways and town ways.

That part of the city now South Boston was formerly part of Dorchester, and was set off from that town, and annexed to Boston, by an act passed on the 6th of March, 1804. Several other acts were passed at the same time, having the same object in view. One was an act to authorize the erection of a toll bridge from Dorchester Neck to the town landing in the southerly part of Boston, — South Boston bridge, — and another to incorporate a company to erect a new, straight and wide street on and along the flats, from the western terminus of South Boston bridge to the central part of the town, to be called Front street.

These acts all had one object in view, which was to add a large tract of comparatively vacant land to the town then

becoming populous, to be converted into building lots, and to encourage inhabitants to settle and build thereon. To attain that object, it was obviously necessary for the benefit of all, that a certain portion of the soil should be appropriated to common use, for ways, markets, burying-grounds, and other public purposes ; and that it was for the interest of all, that these should be laid out in a regular and orderly manner ; and that this should be done prospectively, that each proprietor might adjust his improvements and his sales of lots accordingly.

The act is to be regarded as a grant or private act, made for the benefit of those included in it, and binding upon them if they assent ; and we think that such assent may be proved by parol evidence of acts done under it, though it would not be binding without such assent. *Ellis* v. *Marshall*, 2 Mass. 269. The principal act is that to set off the north-east part of Dorchester, and annex the same to the town of Boston.

The first section fixes the boundaries. The second section requires the proprietors of said tract to set apart three lots on the same, for public use, for a market-place, a school-house, and a burying-ground, to the satisfaction of the select-men, &c., such lots to vest in the town of Boston forever, without compensation therefor by the town ; with a further provision, that if any proprietor, whose land might be taken, should claim compensation, it should be assessed equally upon all the proprietors. From these provisions, it is manifest, that the legislature, whatever the fact might be, acted upon the belief, that these provisions were made with the assent of all the proprietors. For it is quite certain, that, at that day, — the day of turnpikes, bridges, and canals, — the legislature would not thus authorize the taking of private property for public use without compensation, unless with the consent of all concerned. We do not mean to intimate, that the act itself would be conclusive evidence of the assent of any individual ; but we mean to say, that as the legislature professes to act for and to include them if they accept,

by organizing, meeting and voting to accept, or by claiming privileges and benefits from the act, it becomes binding upon all those who so accept it and claim under it.

We now come to the third section, which vests the authority in the selectmen to lay out streets. It provides, that the selectmen of said town shall be and are authorized to lay out such streets and lanes through the said tract, as in their judgment may be for the common benefit of said proprietors, and of said town of Boston, a reasonable attention being paid to the wishes of the proprietors, &c.; provided only, that no damage or compensation shall be allowed to any proprietor, for such streets and lanes as shall be laid out within twelve months from the passing of the act, and provided also, that the town of Boston shall not be obliged to complete the streets laid out by their selectmen, pursuant to this act, sooner than they may deem it expedient so to do.

It is to be borne in mind, that by a special law then in force, passed June the 22d, 1799, the selectmen of Boston had power to lay out streets, lanes, and alleys; and no vote of the town thereon, confirming the same, was required, as in case of laying out town ways in other towns. The act of the selectmen is itself definitive and final; and therefore it was held, that a writ of *certiorari* might go to them *Parks* v. *Boston*, 8 Pick. 218; *Comm'th* v. *Boston*, 16 Pick. 442. The powers of the selectmen, under the act of annexation, were fully considered in the case last cited. In that case, it was not contested, indeed, it was agreed, that the proceedings of the selectmen, in laying out these streets, were regular and valid; but this cannot conclude other parties.

But there are some preliminary questions which are also to be considered. Could Wright, the plaintiff, deny the validity of these proceedings, in a mere collateral suit, and is not the act of the selectmen binding and conclusive, until reversed or set aside? In general such proceedings are so if voidable only, and not void.

In the case of the *Comm'th* v. *Weiher*, 3 Met. 445, indeed, it was held, that one injured by laying out a town way

when it is reported by the selectmen and confirmed by vote of the town, may avoid such laying out by plea and proof, because *certiorari* would not lie to reverse it. Here, that reason does not apply.

Again, is it not questionable whether the plaintiff was injured by it? He purchased long afterwards, by conveyances, in which the rights of way of the town were reserved If this referred to ways actually laid out, ways *de facto*, then it was a waiver.

But, is it clear, that as a regular laying out, pursuant to the power vested in the selectmen, their act is obnoxious to the exception taken to it? It may be necessary to compare dates. The act passed March the 6th, 1804. The power was to be executed within one year. We may take notice of another legislative act passed June, 1804, incorporating the South Boston Association, naming a few individuals, and including all other proprietors, who should join, with power to appoint officers, make streets, &c. The plan of Withington, upon which the selectmen acted, is described as having been made October 4th, 1804, which contained the pro gramme, or prospective laying out, and the definitive vote was passed February 27th, 1805.

When, therefore, the selectmen recite that "they have conferred with the proprietors," may it not mean all the proprietors, or the proprietors generally? They could not confer with those who had no notice.

It is said there is a discrepancy between the streets as described in the record, and the delineation on the plan referred to. If, taking the whole together, the streets intended can be identified, and drawn on the ground, misdescription will not avoid or vitiate it, any more than what is called *falsa demonstratio* in a deed.

But, lastly, supposing there are irregularities in the proceedings, not rendering them void, but only voidable, are they of such a nature, that a court would feel bound to set them aside, upon the question now before them, on a petition for a *certiorari*?

In general, a court will not interfere on such a petition, where there is no substantial error, (*Ex parte Weston*, 11 Mass. 417;) or to correct errors in form, in establishing a highway, after the way has been located, accepted and made, (*Ex parte Miller*, 4 Mass. 56 ; *Rutland* v. *Worcester*, 20 Pick. 71. ;) or where parties interested are proved to have had actual notice, although it does not appear on the proceedings, (*Hancock* v. *Boston*, 1 Met. 122 ;) or where a great length of time has elapsed, and parties interested have acquiesced, (*Hancock* v. *Boston*, 1 Met. 122 ; *Whateley* v. *Franklin*, 1 Met. 336 ;) or where substantial justice has been done, and where, on reversal, the parties could not be placed *in statu quo*, (*Comm'th* v. *Westborough*, 3 Mass. 406 ; *Rutland* v. *Worcester*, 20 Pick. 71 ; *Gleason* v. *Sloper*, 24 Pick. 181 ; *Whateley* v. *Franklin*, 1 Met. 336.)

These proceedings of the selectmen having been rejected as evidence, upon the question, whether these streets were highways, to which ruling the defendant excepted, and the verdict being in his favor notwithstanding, the question of the correctness of the ruling is not directly made on this argument; but we have thought it proper to state thus much, in order to preclude the supposition, that this case is an authority against the validity of these proceedings, should the question again arise, although it is not necessary to decide it 'n this case.          *Exceptions overruled.*