## DAVID HENSHAW *vs.* THOMAS HUNTING.

The record of the laying out of the streets in South Boston, made by the selectmen of Boston, pursuant to the directions of *St.* 1803, *c.* 111, is thus: " The selectmen have determined and agreed to lay out the streets through the whole of said tract, now called South Boston, according to a plan drawn by M. W., surveyor;" " the streets agreed upon and laid out are described as follows:" among the streets so described were three " to the northward of Broadway, and parallel thereto, all of them fifty feet wide," " the street on the northern shore in Boston Harbor to be called First Street," and to be two hundred and fifty feet distant from the second. First Street was laid out according to this description from the easterly part of South Boston as far westwardly as the width of the land between Broadway and the northern shore would allow. *Held*, that a section of a street, drawn on the plan of M. W. along the northern shore, though only forty feet wide, and only one hundred and eighty feet distant from the second street, and though neither it. nor the corresponding part of the second street, was parallel to Broadway, conformed to the description in the record sufficiently to authorize the mayor and aldermen of Boston to complete it.

The possession and fencing, for more than twenty years, by one holding no conveyance thereof, of land in South Boston, over which a street was laid out by the selectmen under *St.* 1808, *c.* 111, but which has not been ordered to be completed, is not such an adverse possession as to affect the right of the mayor and aldermen of Boston to complete the street.

A highway may be located, without special authority of the legislature, over flats, lying between high and low water mark, which have been lawfully filled up by the proprietor of the adjoining upland.

ACTION OF TORT against the superintendent of streets of the city of Boston, for forcibly entering the plaintiff's close in South

Boston, (described in the declaration,) and tearing down and removing the fences standing thereon.

The defendant, in his answer, denied that he ever forcibly entered any close of the plaintiff, or tore down or removed any fences standing on any close of the plaintiff. And he alleged that a part of the premises described in the plaintiff's declaration was a public street or way of the city of Boston; and that the mayor and aldermen of said city, by an order passed on the 15th of September 1851, ordered " that all that portion of First Street, which is situated between A and B Streets, be forthwith completed under the direction of the superintendent of streets and the city engineer; " and that the defendant, under said order, entered upon that part of the land described in the plaintiff's declaration, which is a public street or way as aforesaid, and graded the same. And as to the remainder of the premises described in the plaintiff's declaration, the defendant said that he did not enter the same, nor tear down nor remove the fences thereon.

The plaintiff, in his replication, denied that any part of the premises described in his declaration was a public street or way of the city of Boston, or ever had been; and averred that the whole of said premises was his property, and that he was in the possession thereof at the time of the said trespass.

The records of the selectmen of the town of Boston contain the following record of the laying out of the streets at South Boston : " Boston, ss. At a meeting of the selectmen, February 27, 1805. In compliance with the directions in the third section of the act of the legislature of this commonwealth, entitled ' An Act to set off the northeast part of the Town of Dorchester, and to annex the same to the Town of Boston,' the selectmen having viewed the land described in the said act, and having conferred with the proprietors thereof relative to laying out such streets and lanes through the said tract, as in their judgment may be for the common benefit of said proprietors and of the town of Boston, the selectmen have determined and agreed to lay out the streets through the whole of the said tract now called South Boston, according to a plan drawn by Mather Withington, sur-

veyor, dated October 4, 1804, and signed by him; which plan is preserved among the records of the town of Boston.

" The streets agreed upon and laid out, are described as follows: One principal street, to begin on the line which divides South Boston from Dorchester, at the place where the present road over the marsh and causeway crosses said division line, thence running north 63 degrees east the distance of forty two chains, twenty links, being eighty feet wide, and to be called Dorchester Street. From the northerly end of said Dorchester Street another principal street, to run southerly $84\frac{1}{2}$ degrees east to the sea or salt water, and northerly 24 degrees west, until it meets the line of the Turnpike; the above described street to be 80 feet wide, and to be called Broadway. Also, to the northward of Broadway, and parallel thereto, three streets, all of them 50 feet wide; the one nearest to Broadway being $310\frac{3}{4}$ feet distant therefrom on the western branch, and 250 feet distant on the eastern branch. The next street northerly to be 220 feet distant from the last mentioned street on the westerly part, and 250 feet distant from the same on the easterly part. The other street north of the above, to be 250 feet distant from the last described street."

"And it is determined that all the above described streets shall be named and called as follows: The street on the northern shore in Boston Harbor to be called First Street, E. & W. The street next parallel thereto, Second Street, E. & W. The street next parallel, Third Street, E. & W. The street next parallel, Broadway, E. & W."

" The cross streets upon the said tract are described as follows, namely: One street 500 feet from the westerly end of Broadway and from the Turnpike, to run exactly at right angles across Broadway, to the westerly end of Fifth Street where it unites with the turnpike; said street being 50 feet wide. Also, five other streets west of Dorchester Street, all at right angles with West Broadway, and parallel with the first described cross street, the first of them to be 500 feet therefrom, and all the others to be 500 feet apart; each of these streets to be 50 feet

wide, and all of them running from the boundary line to the sea."

"And it is determined by the selectmen that the cross streets above described shall be known and designated by the letters of the alphabet as follows: Beginning at the most westerly cross street, which shall be called A Street; the second to be called B Street; &c."

"And it is determined that all the streets which extend to the sea or salt water, on any part of the said tract of land called South Boston, shall be considered as continuing in the same direction and of the same width, as far upon the flats or into the sea, as the right of the proprietors shall extend through whose land the same streets shall be laid out."

So much of the plan drawn by Withington, referred to in this record, as is material to the understanding of the case, is copied in the margin. The dotted lines designate the boundaries of the plaintiff's lot. The black space denotes the premises described in the declaration. The two streets on Withington's plan, between which the plaintiff's lot is situated, are laid down on said plan as one hundred and eighty feet apart, and each forty feet wide.

The parties submitted the case to the court upon the fore-

going record of the selectmen, and the following facts: On the 15th of March 1811, the South Boston Association conveyed to the Boston Glass Manufactory a lot of land in South Boston, " bounded as follows: Beginning at the corner of First Street and B Street, and running southerly to Second Street, on said B Street, one hundred and ninety five feet; then turning, and running westerly, at right angles with said street, to First Street, measuring one hundred and eighty feet; then turning, and running on said First Street to B Street, the bound departed from, two hundred and ninety feet; agreeably to the plan thereto annexed." On the back of this deed was a plan, in which two streets, there called First and Second Streets, were delineated, exactly corresponding to the two streets between which the plaintiff's lot is placed on the plan in the margin of the preceding page. This deed also purported to convey a parcel of flats on the northerly side of First Street. On the 25th of May 1827, the premises included in this deed were conveyed by the Boston Glass Manufactory to William Sullivan and others, who, on the 29th of April 1829, conveyed a part of said premises to Edmund Munroe, by a description substantially like the description contained in his deed next to be mentioned.

On the 30th of October 1830, Edmund Munroe conveyed to the defendant, and others, whose title the defendant acquired on the 18th of October 1848, a parcel of land in South Boston, bounded and measuring substantially as follows: " Beginning on the northwardly side of Second Street, at a point one-hundred and fifteen feet and six inches westwardly from the corner of said Second Street," and running northwardly and bounding eastwardly on Edward A. Pearson's land one hundred and eighty feet; " northwardly on First Street ninety one feet;" westwardly on land of said Munroe one hundred and eighty feet; " and southwardly on said Second Street ninety nine feet and four inches to the point of beginning; for a more correct understanding of which description reference is hereby had to the plan of the premises annexed to this deed. Also a piece of flats [described] on the northwardly side of said First Street." On the back of this deed was a plan, in which First and Second

Streets were shown as on the plan annexed to the deed from the South Boston Association to the Boston Glass Manufactory. First Street has been similarly recognized in many deeds of land adjacent to the plaintiff's, made at different times since 1811, by those from whom he derives his title.

In 1813 the fence in continuation of the eastern boundary of the plaintiff's estate was erected by Thomas C. Cains, who then occupied the plaintiff's estate and the one next eastwardly of the same; and in 1825 the fence in continuation of the western boundary of said estate was erected; both of which fences ran across the land now claimed as a street, down to and projecting over the sea wall; and said fences were maintained from the above mentioned periods by the several owners of said estates, among whom were the plaintiff and his grantors, until they were torn down by the defendant on the 13th of October 1851. The defendant, with the other grantees in the deed of October 30th 1830, entered upon and took possession of the premises in dis-pute; and, immediately after said conveyance, rebuilt the sea wall opposite their estate, which had fallen down, and filled up a large part of the land, (which had been washed away by the sea,) now claimed as a street, and lying between the continuation of the easterly and westerly lines of the estate described in their deed, at their own cost.

The plaintiff and those under whom he claims title have openly and continuously used and occupied, without interruption, let or hindrance, except as hereinafter stated, and claiming title thereto under their deed, the premises bounded by the continuations of the easterly and westerly lines of the estate described in their deeds, being part of the *locus in quo*, from 1825 to the 13th of October 1851; and from 1825 to 1851 no act was done by the city in regard to said land, claimed as part of First Street. All that part of First Street, between Turnpike Street and the land of Downer, adjoining the plaintiff's estate on the west, was completed and opened for travel many years since; the southerly line thereof being the same as that fixed for the premises in dispute, and extending to the sea wall, being forty one feet in width at Downer's westerly line. B Street, from Second

Street to First Street, has never been completed, but is used as a dock. A Street has been completed to First Street, but damages were paid for land taken for A Street between First and Second Streets, as said street is not laid down on Withington's plan between those two points. In March or April 1851, a portion of the sea wall, opposite to the plaintiff's estate, was washed down by storms, and was rebuilt by the plaintiff.

The mayor and aldermen of the city of Boston, who had been duly appointed surveyors of highways for 1851, passed during that year the order set forth in the defendant's answer. Under this order the defendant, on the 13th of October 1851, entered upon the premises in dispute and took down the plaintiff's fences to the width of forty feet, (being the width of the street as laid down over the premises on the plan of Withington,) extending from a line 180 feet distant in a northerly direction from the northerly line of Second Street, as the same has been completed, and parallel thereto, and has made a street over the land so opened.

The premises in question have never been used by the public as a street or travelled highway, except as herein stated, nor was any street over them made and graded until the said 13th of October. The sea wall from Turnpike Street to B Street was commenced in 1803, and was completed between the years 1805 and 1807, by the South Boston Association or their grantors, and contemporaneously with the same the flats were filled up next adjoining inside.

The boundaries of the premises claimed by the city as a street were never defined or fixed by monuments or records, until the southerly line of the same was fixed, after the order of September 15th 1851, at 180 feet from the line of Second Street and parallel thereto; the northerly line thereof has not been fixed.

The parties agreed, that if the court should be of opinion that the plaintiff could recover on the case stated, the case might be sent to an assessor or a jury to assess damages; but that if the plaintiff's action could not be maintained, judgment might be rendered for the defendant; or the court might make such other disposition of the case as the law might require.

18*

*W. G. Russell,* for the plaintiff. I. No location of a street over the premises in question was made, or intended to be made, by the selectmen, by the record of February 27th 1805. 1. The location actually made by them is clear and definite, and excludes the *locus in quo.* By their record they locate Broadway, prescribing its termini, its direction, its limits; and then locate three streets northerly of Broadway and parallel with it, each fifty feet in width, namely, Third Street, Second Street and First Street; the last named street being 250 feet from Second Street. Now First Street, as claimed by the city over the premises in question, is but 180 feet from Second Street; is but forty feet wide, and is not parallel with Broadway. It is therefore clearly not the street located by the selectmen. 2. There is a First Street actually existing, in part completed by the city, corresponding to the location made by the record. See First Street East, upon the plan of Withington. There is therefore no need to create a street to satisfy any supposed intention of the selectmen, even if that were possible. 3. The variance between the street laid out and described in the record, and the street now claimed by the city, cannot be aided by reference to Withington's plan. It is true that, by that plan, a street appears over the premises in question. But the selectmen do not, by their vote, adopt the whole plan. They only lay out such streets as they specifically describe, according to the plan. Their language is, " The streets agreed upon and laid out are described as follows." If any streets upon the plan are not described, it is because they were not agreed upon or laid out. The difference between the plan and the location is not such that " taking the whole together, the street can be identified, and drawn on the ground." *Wright* v. *Tukey,* 3 Cush. 299. And see *Commonwealth* v. *Boston,* 16 Pick. 446. On the contrary, the street described and the street upon the plan differ in every particular; and a street drawn upon the ground, according to any item of the description, will not touch the *locus in quo.* 4. The location, if intended to be over the premises in question, is void for uncertainty. *Hinckley* v. *Hastings,* 2 Pick. 162. Nothing can be more uncertain than

a location made by a combination of a plan and a record which disagree in every particular.

II. The location of First Street over the *locus in quo,* if made by the selectmen, was void; the premises being below high water mark. No power exists in town or county officers, unless by special authority of the legislature, to lay out a highway over any part of the navigable waters of the Commonwealth. *Commonwealth* v. *Charlestown,* 1 Pick. 180. *Commonwealth* v. *Coombs,* 2 Mass. 489. *Arundel* v. *M'Culloch,* 10 Mass. 70. Nor is the rule varied by the fact that the highway so laid out will be no further obstacle to navigation than already exists under legislative authority. Thus, county commissioners cannot lay out a highway above a bridge built over navigable waters. *Charlestown* v. *County Commissioners,* 3 Met. 202. Nor is it affected by the fact that the proprietor of the upland has exercised his right of filling up the flats below high water mark. *Kean* v. *Stetson,* 5 Pick. 494, 495. Although the powers of the selectmen under *St.* 1803, *c.* 111, were somewhat peculiar, they were not extended in this respect. At the time of the location in 1805, as appears by the facts agreed, the premises in question had not been filled up or reclaimed from the sea.

III. The adverse possession of the premises in question by the plaintiff and his grantors, and the maintaining of the fences for upwards of twenty years, establish a valid title in the plaintiff. 1. If any street exists, the fences constitute the true boundary of such street, and exclude therefrom the *locus in quo.* Rev. Sts. *c.* 24, § 61. The present case comes within the limitation of twenty years, prescribed by that statute. The statement finds that the boundaries of First Street have not been fixed by monuments or records. It is apparent that from lapse of time, non-user, irreconcilable locations, or otherwise, the boundaries are not known, and have always been uncertain. The term "boundaries" applies as well to the bounds by which the length of a street is determined, as to those by which its width is fixed. The fences therefore limit the length of First Street, excluding the plaintiff's premises. 2. From such adverse possession and non-user, the court will infer either that a street

never existed, or that it has been discontinued. In case of private ways, a non-user for twenty years affords a presumption that the right never existed, or has been extinguished by an adverse right. 3 Kent Com. (6th ed.) 448, *& note. Corning* v. *Gould,* 16 Wend. 531. *Hazard* v. *Johnson,* 3 Mason, 275, 276. From long disuse a release is presumed. 3 Cruise Dig. (Greenl. Ed.) Tit. 31, *c.* 1, § 40, *& note. Doe* v. *Hilder,* 2 B. & Ald. 791. *Wright* v. *Freeman,* 5 Har. & Johns. 467. A grant will be presumed from lapse of time against the state or sovereign, as well as against individuals. 1 Greenl. Ev. § 45. 3 Cruise Dig. (Greenl. Ed.) Tit. 31, *c.* 1, § 10, *& note. Mayor of Hull* v. *Horner,* Cowp. 102. *Crooker* v. *Pendleton,* 23 Maine, 339. And this doctrine applies to public highways. *Hillary* v. *Waller,* 12 Ves. 239, 265. *Commissioners of Georgetown* v. *Taylor,* 2 Bay, 282. *Rowan* v. *Portland,* 8 B. Monr. 232.*

*G. S. Hillard,* (City Solicitor,) *& P. W. Chandler,* for the defendant.

MERRICK, J. This action is brought to recover damages for a trespass, alleged to have been committed by the defendant, in tearing down a fence belonging to the plaintiff, erected by him on land claimed by the city of Boston as a part of a public highway named First Street, in that part of the city called South Boston, and for making and maintaining said street over the premises. It is conceded by the plaintiff that all the acts complained of were done by the defendant under the authority and direction of the mayor and aldermen of the city of Boston; and that if the land, upon which he entered and took down the fence, was within the limits of a highway, which the city had a right, and was under legal obligation, to maintain, no trespass was committed, and this action cannot be maintained.

---

* Two other questions were argued by the counsel, namely, whether, on the facts stated, it appeared that there had been a dedication of the premises in question to public use; and whether the plaintiff was estopped, by the terms of the deeds under which he claimed, to deny the location of First Street over the premises in question. But as the court did not decide either of these questions, the arguments upon them are omitted.

This therefore is the first and chief question arising upon these conflicting claims of the parties.

The laying out of streets and public ways in South Boston was originally under authority specially granted, and upon a plan peculiar to that locality. The act of the legislature, passed on the 6th of March 1804, ( *St.* 1803, *c.* 111,) by virtue of which that particular territory was annexed to the then town of Boston, the record of the proceedings of the selectmen of that town, at their meeting on the 27th of February 1805, together with the plan of Mather Withington therein referred to, are all submitted to the consideration of the court in the statement of facts agreed on by the parties, and afford the means of ascertaining the extent of the special authority with which the selectmen of the town of Boston were invested, and how far, and in what manner, it has been executed. From these documents it appears that in pursuance of such authority the selectmen did, at the time of their meeting before mentioned, lay out a large number of streets through and over the entire tract of land then recently annexed and added to the town.

The legal effect of these proceedings of the selectmen in laying out streets in South Boston has often heretofore been a subject of consideration in this court, but is now perfectly well settled, and can no longer be regarded as in any degree an open question. The land, over which those streets were so laid out, was thereby devoted and appropriated to the public use; and nothing further remained to be done to constitute them, to all intents and purposes, common and public highways, but an order or adjudication by the selectmen, that it was expedient that they should be completed. Until such order or adjudication should be made, the land was to remain in the occupancy and possession of its respective owners, subject however to the right acquired by, and vested in, the town of Boston, by the laying out and location there of the several streets over and upon it. And as the public convenience and necessity did not afterwards require all the streets, nor all the parts of any one of them, to be opened, wrought and completed for public use, at one and the same period of time, it has been held competent for the

selectmen to exercise a discretion upon the subject, and to make such occasional orders for the completion of such parts of those streets as existing exigencies and the public convenience then required. These conclusions, deduced from the provisions of the statute under which streets and highways were originally laid out and established in this particular locality, have been heretofore so fully exposed and illustrated in opinions given upon the decision of former cases in this court, that a reference to them renders further discussion upon the subject at this time unnecessary and superfluous. *Commonwealth* v. *Boston,* 16 Pick. 442. *Wright* v. *Tukey,* 3 Cush. 290. *Bowman* v. *Boston,* 5 Cush. 1. *Fernald* v. *Boston,* Suffolk, November term 1853.

The selectmen of Boston, on the 27th of February 1805, determined and agreed to lay out streets, according to the plan of Mather Withington, through the whole territory of South Boston. The record of their proceedings contains a brief description of those which were then and so laid out. Among them are three, described in the record as being " to the northward of Broadway and parallel thereto, and fifty feet wide," and the most northerly of them, which is called First Street, is said to be 250 feet distant from that next to it.

On inspection of the plan of Withington, there is found delineated, easterly of Dorchester Street, a section of a street, corresponding, as far as it extends, with the description of First Street, in the record of the selectmen. There is also found on the same plan, westerly of Dorchester Street, the delineation of a section of a street extending from Turnpike to B Street, and at its eastern termination are written the words " First Street." The defendant contends that this is a part of First Street, although it does not correspond in all particulars with the description of that street in the selectmen's record. It is only 180 instead of 250 feet distant from Second Street; it is marked as 40 and not 50 feet in width; and its course and direction are not parallel with Broadway.

It is admitted by the plaintiff, that the street actually laid out and worked for public use, upon the land from Turnpike to B, Street, corresponds with and is in conformity to the sketch

and delineation of this section of a street on the plan of With-
ington, and does in fact embrace the land in controversy, where
the defendant entered and tore down the plaintiff's fence.    But
he insists that the evidence is wholly insufficient to show that
any part of First Street was laid out according to this delinea-
tion; that the clear and definite description of that street, on
the record of the meeting of the selectmen, necessarily excludes
from it all the land indicated by that delineation; and that in
fact, if the selectmen ever intended to locate a way in this par-
ticular place and direction, and over this land, the location, by
reason of the discrepancy and contradiction between the de-
scription in the record and the delineation on the plan, is void
for uncertainty.

There is no doubt but that there are discrepancies in the
several particulars above alleged and enumerated.    Difficulties
of a similar character, if not of equal magnitude and impor-
tance, have been discovered concerning other ways laid out at
the same time in South Boston.    But it has been held, that if
taking the whole together—that is, the description in the rec-
ord and the delineation on the plan—the streets intended can
be identified and drawn on the ground, misdescription will not
avoid or vitiate the laying out of the way, any more than
what is called *falsa demonstratio* in a deed.    *Wright* v. *Tukey*,
3 Cush. 299.    And upon that principle, considering the dis-
tinctness and certainty of the manifestations upon the plan,
and that the delineation upon it varies only in part from the
description contained in the record, it seems to us that there is
no real difficulty in determining that the section of way in ques-
tion was laid out as a part of First Street.

Streets were laid out by the selectmen, as stated in the record,
through the whole tract of land of which South Boston consists,
according to the plan of Mather Withington.    The record, by
such reference, proves the laying out of every street delineated
on that plan.    If any one of them should be omitted, it would
not be true that streets were laid out through the whole tract.
The plan therefore exhibits exactly what the selectmen intended
to do, and what they in fact did do.    It shows that they laid

out all the streets precisely as thereon delineated.   This is just as true of the street, or section of a street, extending from Turnpike to B Street, as of any other drawn out and marked upon it. And though in some particulars misdescribed in the record, yet neither the fact that it was actually laid out, nor the precise plan of its location, is left in any kind of doubt or uncertainty. On the contrary, both are distinctly shown and conclusively established by the plan, which, by the express terms of the record, must be regarded as a complete exemplication of the streets laid out.   The plan fixes and identifies this street, together with its direction, course and boundaries; and it is not pretended by the plaintiff that there is any difficulty in drawing it upon the ground, as it is exhibited and delineated upon the plan.   The description therefore, in other particulars, cannot be allowed to avoid it.

Other considerations lead to the same conclusion.   Broadway was laid out from the eastern shore of the peninsula to Turnpike Street.  The record describes three streets, First, Second, and Third, as laid out northerly of and parallel to it.   As no particular limitation is described in respect to either of them, it is to be presumed that they are coextensive with it, and have the like termination.   For this reason, it is necessary to continue and extend First to Turnpike Street.   It is so delineated on the plan. And in this particular there is an exact correspondence between the delineation on the plan and the description in the record. There is also a similar correspondence in another particular. First Street is described in the record as being the street laid out " on the northern shore in Boston Harbor," and the plan shows that the section of the street from Turnpike to B Street is laid down in that exact locality.   Its northern boundary is shown by the plan to be exactly coincident with the shore, and upon the sea wall which was then partially or wholly built or erected there.   The description in the record calls for a street in this line, and according to this boundary; and such a street is found drawn upon the plan.   There can therefore be no doubt that it was then laid out.

No practical difficulty has ever occurred in identifying this

section of First Street, and drawing it upon the ground. Its completion as a way for public use, over a very large part of it, was effected many years since; and no controversy is suggested as having ever arisen in relation to the point of its commencement, its course and direction, or the boundaries within which it was limited. And though these boundaries do not correspond in all particulars with the description in the record, they do in many, and they are coincident with the lines drawn on the plan. Besides; they are adapted to the land over which the street is laid, which indeed could not have been located parallel to Broadway as far west as Turnpike Street, and as distant from it as described in the record, without having extended several hundred feet into the water, beyond the northern shore of South Boston. This, we think, is obviously the misdescription, which must be rejected. This being done, all difficulty disappears. The place of the location of the street is exactly indicated by other parts of the description in the record, is precisely identified by the plan, and may be drawn on the ground without embarrassment or perplexity. This has been done; and it is agreed by the plaintiff that, as thus defined and established, the premises in controversy are within the limits of First Street.

It is unnecessary, in the view we have taken, to place reliance upon the deeds and conveyances which have been referred to. But it may be seen from these, that they who were the owners of the land at the time of, or immediately after, the laying out of First Street, recognized the existence of such a way over the land in controversy. The South Boston Association conveyed to the Boston Glass Manufactory, in the year 1811, a tract of land, including the premises owned by the plaintiff, on both sides of a street called by that name, and they refer to a plan on the back of their deed, in which the street is exhibited precisely as it is delineated by Withington. It is also recognized in subsequent conveyances. And in the deed of Edmund Munroe, under which the plaintiff derives all his title to the adjacent land, (he having in fact no title to the land within the limits of the street, except what he has acquired by an alleged

adverse possession,) First Street is expressly named and men‧ tioned, and is also shown in a plan drawn upon the back of it. So that for a long period, from a few years after the action of the selectmen of Boston in 1805, to the time when the plaintiff became interested in the adjacent land, and indeed down to a more recent date, all the abutters constantly recognized First Street as a well known and existing way. It seems scarcely necessary to add, though it tends to the same result, that a large portion of this particular section of First Street, namely, from Turnpike Street to a point somewhat easterly of A Street, was early completed, and for many years has been opened and appropriated to public use, in the very place, and upon the exact line, designated in the plan of Withington.

The objection of the plaintiff, that if First Street was legally laid out as before mentioned, in 1805, he has since acquired a title to the land over which it was laid, by adverse possession for more than twenty years, cannot, upon the facts agreed, be sustained; first, because, as has already been stated, the plaintiff shows no deed to himself of the land in controversy, from any former occupant; and secondly, because his possession, and the possession of those who preceded him, was perfectly consistent with the rights of the town of Boston. The very nature of the rights vested in the town by the laying out of the streets in South Boston rendered it impossible that there should be, as against them, any adverse possession, until an official order or adjudication was made that the street should be completed; or until some act or acts were done, which were equivalent thereto. There never having been any such order for the completion of the part of First Street, now in controversy, previously to the year 1851, no prior possession or occupancy of the land within its limits was adverse to the rights of the city of Boston, and no title destructive of their rights could in that way have been acquired.

Nor can the plaintiff avail himself of his other objection, that the location of this particular section of First Street was void, because it was upon and over land covered by navigable waters. No doubt, the principle asserted by him is correct. Navigable

waters cannot lawfully be obstructed by highways, whether laid out by towns, or by county commissioners, without previous permission given by the government. But upon the facts stated by the parties, it does not appear that this part of First Street was laid out over land covered by navigable waters, or that a wrought way there would be any impediment or obstruction to navigation. On the contrary it appears, we think, very satisfactorily, that the proprietors of the upland had then exercised their right as owners of the flats, had filled them up, and excluded the sea therefrom. It is expressly stated, that the sea wall, built to prevent the washing away of the earth filled in, was commenced as early as the year 1803, though it was not finished before 1807. But it might have been, and probably was, so far completed in 1805, as to be a temporary security. Upon Withington's plan, the line of shore, above which the water did not flow, is plainly defined, and shows that the premises in controversy had been already reclaimed from the sea, and made solid like the adjoining upland. It was in this condition of things that the legislature gave authority to the selectmen of the town of Boston to lay out such streets in South Boston as in their judgment would be for the common benefit of the town and the proprietors of the land. And this authority was executed. The legislature having conferred the authority under which the street was laid out, after the flats in this place had been filled up, it is not open to the plaintiff to object that the way is a nuisance, or that its original location was a mere nullity.

Upon the conclusions already stated, the defendant is entitled to judgment; and therefore it is unnecessary to consider the other questions which were discussed at the argument of the case. *Judgment for the defendant*