FRED. H. BAILLIERE ET AL. v. ATLANTIC SHINGLE, COOPERAGE AND VENEER COMPANY ET AL.

(Filed 13 May, 1909.)

1. **Deeds and Conveyances—Commissioner's Deed—Decree—Specific Description.**

    A commissioner to sell land in partition proceedings may not extend or change the boundaries from those given in the decree, but he may make the description of the land sold by him more specific and certain.

2. **Deeds and Conveyances—Cities and Towns—Streets—Dedication Irrevocable—Acceptance.**

    When a grantor conveys lands with reference to an authorized city map, containing the line of city blocks and streets and de-

scribing the property conveyed, so as to reserve the streets to the city, the dedication is complete and irrevocable, and subject to the acceptance at any time thereafter for the enjoyment of the public, under the control and regulation of the proper city authorities. (*Boyden v. Achenbach*, 79 N. C., 539, and *Kennedy v. Williams*, 87 N. C., 6, cited and distinguished.)

3. **Deeds and Conveyances — Cities and Towns — Streets — Description—Trespass.**

One who has acquired title to a lot of land under a deed conveying a tract and recognizing and describing certain streets thereon, in accordance with an authorized city map defining them, is not guilty of trespass in using the streets, thus referred to, for ordinary street purposes, though the city may not have accepted the streets thus dedicated.

ACTION tried before *Lyon, J.,* who found the facts, by consent, at December Term, 1908, of NEW HANOVER.

Plaintiffs claim title to a strip of land within the corporate limits of the city of Wilmington, beginning at low-water mark on the eastern shore of the Cape Fear River; A, running thence eastwardly 726 feet to the southern line of Front Street; B, thence northwardly along the line of said street 66 feet to C; thence westwardly 726 feet to the low-water mark of said river; D, thence the same course to the channel of the river; E, thence southerly 66 feet; F, thence westwardly to the beginning.

Plaintiffs, and those under whom they claim, were, prior to 22 August, 1892, the owners of a lot in the city of Wilmington. On the said day they instituted a special proceeding in the Superior Court of New Hanover County for the purpose of obtaining a decree for sale of said lot and making partition of the proceeds. In the petition in said proceeding they described the said lot as follows: "Beginning, a stone P K D and T K M, at the foot of Meares Street; thence S. 89° 5′ E. 114 chains, to a stone, P K D and T K M; thence N. 1 E. 4 chains and 82 links, to a stone, P K D, E B D; thence N. 88° 35′ W. 103 chains, to the western line of Front Street, at a point 119 feet and 3 inches from its intersection with the southern line of Wright Street; thence with said western line of Front Street northwardly 386 feet; thence S. 78¾° west about 1,650 feet, to the channel of the river; southwardly about 643 feet, to a

point bearing S. 79¾° west from the stone marked P K D and
T K M, first above-named as the beginning corner, and thence

N. 79¾° E. 800 feet, more or less, to the beginning." This
description includes the *locus in quo,* as will be seen by reference

to the map. The petition was duly verified by the plaintiff Evelina M. Bailliere. A decree was duly made in said proceeding ordering a sale of the property and appointing Daniel O'Connor, Esq., a commissioner to make said sale. The portion of the decree material to this appeal is in the following language: "And it is hereby ordered that so much of the said land as is bounded on the north by Wright Street, on the south by Meares Street, on the east by Front Street, and on the west by the Cape Fear River be sold by the commissioner," etc. On 5 November, 1892, the commissioner made report that, pursuant to said decree, he had sold the "land which lies between the Cape Fear River on the west and Front Street on the east, and Wright Street on the north and Meares Street on the south," to David C. Gaslin, who transferred his bid to Stephen L. Cowan, etc. Said sale was duly confirmed. The description of the land in the decree is in the language of the report. On 7 November, 1892, the commissioner executed a deed for the lot sold to Cowan, containing the following description: "Lying and being in the city of Wilmington, aforesaid, and beginning at low-water mark on the eastern shore of the Cape Fear River, at the intersection of the southern line of Wright Street with said river, and running thence eastwardly along said line of Wright Street 1,650 feet, more or less, to the western line of Front Street; thence southwardly along said line of Front Street 396 feet to the northern line of Meares Street; thence westwardly along the said line of Meares Street 1,650 feet, more or less, to the low-water mark of the Cape Fear River, and thence northwardly with the river 396 feet to the beginning; the same being all of blocks or squares Nos. 15 and 16, according to the official plan of said city, together with, all and singular, the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining." The commissioner collected the purchase money and paid same to the petitioners, less the cost and expense, filing their receipts therefor.

On 22 March, 1900, plaintiffs instituted a second special proceeding in said court for the purpose of bringing the remainder of said property to sale for partition. In the petition filed in said second proceeding the land is described in separate lots as

BAILLIERE *v.* SHINGLE CO.

bounded by the streets as they are laid out on the official map
of said city.   Block 29 is described as "That certain lot or lots
beginning at the intersection of the northern line of Wright
Street with the western line of Surry Street, running thence
north along said western line of Surry Street 156 feet; thence
in a westerly or southwesterly direction to the eastern shore of
the Cape Fear River, at a point 252 feet south from the southern
line of Dawson Street; thence southwesterly along the shore of
the Cape Fear River about 144 feet to the northern line of
Wright Street; thence eastwardly along the northern line of
Wright Street to the western line of Surry Street, the point of
beginning, being part of lot 4 and all of lots 5 and 6, in block
29, according to the official plan of said city.   That certain lot
or lots beginning at the intersection of the northern line of
Wright Street with the eastern line of Surry Street, running
thence east with said northern line of Wright Street 330 feet
to the western line of Front Street; thence along said western
line of Front Street 208 feet; thence west.... degrees south 332
feet, more or less, to a point in the eastern line of Surry Street,
173 feet north from the northern line of Wright Street; thence
along said eastern line of Surry Street south 173 feet, to the
point of beginning, in the northern line of Wright Street, being
part of lots 3 and 4 and all of lots 5 and 6 in block 30, according
to the official plan of said city."

After completing the description of the property included in
said petition, the following language is used: "But so much of
the said property as is contained in blocks 15 and 16 of the
present plan of the said city are excepted as having been con-
veyed by one Daniel O'Connor, commissioner, to Stephen L.
Cowan."   Mr. O'Connor was again appointed commissioner,
and made sale of a number of said lots.   He reported that he
had made sale of the portion of blocks 29 and 30 covered by
description in the petition to Malcolm McKenzie, describing the
same as follows: "Beginning at the intersection of the southern
line of what is designated on the plan of the city of Wilmington
as Wright Street and the low-water line of the eastern shore
of the Cape Fear River, running thence an easterly course with
the southern line of the so-called Wright Street, as shown on

said plan, 1,650 feet, more or less, to the western line of Front
Street; thence northwardly along the western line of said Front
Street 266 feet and 9 inches, thence south 78¾° west about
1,650 feet, more or less, to the channel of the said river, south-
wardly, about 247 feet, more or less, to a point in said river
channel where it would intersect with the southern line of said
so-called Wright Street if extended into the river; thence an
easterly course to the point of beginning, on the eastern shore
of said river. The above embraces the two tracts described in
the petition as Nos. 20 and 21, with the intersecting streets and
river channel, which streets have never been laid out." The
commissioner thereafter reported that "It has been ascertained
that a portion of said property is involved in a complication
relative to the ownership of the parties to this proceeding as to
certain lands on what is called Wright Street, according to the
official map of the city of Wilmington, between the river front-
age and Front Street." He reports that the purchaser is un-
willing to take said property until the question is settled, unless
a reduction in the price is made. Thereupon a decree was made
directing the commissioner to convey to the purchaser the por-
tion of said property, exclusive of the "so-called Wright Street,"
at a reduced price. The official map of the city of Wilmington,
referred to in the petition and introduced in evidence, was
made, pursuant to an act of the General Assembly, in 1870. It
shows all of the streets in said city, with number of blocks, and
lots in each block.

His Honor found, in addition to the foregoing, the following
facts: "There has been no legal proceeding had by the defendant
city to condemn the *locus in quo* in this action to the public
use as a street; and the court finds that the defendant city has
never opened the same as a street; that the defendants, nor those
under whom they claim, have never, in fact, by any acts, accepted
the dedication of the same as a public street, unless the deed
of Daniel O'Connor, commissioner, to Stephen L. Cowan, bear-
ing date 2 October, 1892, operates by law to dedicate as a public
street the *locus in quo*; and that the public has never used the
same as a public street. The defendant shingle company claims
under S. L. Cowan. The defendant has trespassed on said land."

BAILLIERE *v.* SHINGLE CO.

His Honor, upon these findings of fact, was of the opinion that the deed of Daniel O'Connor, commissioner, to Stephen L. Cowan, hereinbefore mentioned, does not operate in law to dedicate the *locus in quo* as a street, and thereupon adjudges that the plaintiffs are the owners of the strip of land described in the complaint, and that defendant shingle company has trespassed thereon. Judgment was rendered for nominal damages. Defendants excepted and appealed.

*Meares & Ruark* for plaintiffs.

*E. K. Bryan* for cooperage company and *M. Bellamy, Jr.,* for city of Wilmington.

CONNOR, J., after stating the case: Judgment was rendered, upon the pleadings, against the defendant city of Wilmington at a former term of the court, and exception duly noted. The appeal by both defendants was argued at this term. Before discussing the merits of the case it will be well to notice the distinction between this and several cases in our reports relied upon by the plaintiffs. In *Boyden v. Achenbach,* 79 N. C., 539, the plaintiff was seeking to establish a right to a private way. It is true that in the opinion something is said about the manner in which a public right of way could be acquired by prescription, but there was no suggestion that such a right of way in that case was dedicated. In *Kennedy v. Williams,* 87 N. C., 6, the right to a public pathway was asserted by reason of long user. In both cases the principle was announced and enforced, that before the lands of a private citizen could be subjected to an easement for a public road or highway the assertion by the public authorities of such claim must be shown by working, etc. The claim of the defendants in this case is founded upon an alleged dedication by the owners of the land to the public as a street. We know as a matter of history that the city of Wilmington is one of the oldest municipalities in the State; that the public streets have been laid out and used in its corporate limits for more than a century. It appears from the evidence in this record that at the session of the General Assembly of 1870-'71 an act was passed directing the aldermen to cause a plan of said city to be made, on which should be designated

the lines of such streets and public alleys as then existed and
of such as might be established by them.   The act directed that
two copies be made, one of which should be deposited in the
office of the Secretary of State and the other in the office of the
Clerk of the Superior Court of New Hanover County.   It fur-
ther appears, by reference to a copy of the map in evidence,
that Wright Street, Front Street and Meares Street are laid out
and·run through plaintiffs' property.  This was known to plain-
tiffs in 1892, when they filed their petition for a sale of the land
· for partition.  The beginning point is located at a marked stone
"at the foot of Meares Street"; a line is called for on "the
western line of Front Street" and another at "the intersection
with the southern line of Wright Street."   In the decree direct-
ing the sale a specific portion of the property is directed to be
sold for a fixed sum—"bounded on the north by Wright Street,
on the south by Meares Street and on the east by Front Street."
The plat shows that this property thus described consists of
blocks 15 and 16.   The same description is set forth in the
report of the commissioner and the decree of confirmation.   The
commissioner, in the deed which he executed to Cowan, gives
a more specific description, concluding with the words "being all
of blocks, or squares, 15 and 16, according to the official plan
of said city."   The plaintiffs insist that the use of these words
by the commissioner was without authority and did not bind
them.   Conceding that the commissioner could not by his deed
extend or change the boundaries, as contained in the decree, it
is manifest that he has not done so.   He has only made more
specific and certain the description of the land sold by him.
Whatever doubt may have arisen from the language used in the
first proceeding is removed by the description contained in the
second.   The portion of the land not sold is described in sepa-
rate blocks, or squares, each paragraph concluding with the
words "according to the official plan of said city."   This lan-
guage is repeated thirty times in the petition, and in concluding
the description it is said: "So much of said property as is con-
tained in blocks 15 and 16 of the present plan of said city are
excepted as having been conveyed by Daniel O'Connor, com-
missioner, to Stephen L. Cowan."   Thus we have the most un-

mistakable recognition of the existence of the official map and
the sale of lots described in accordance with it. The land
covered by streets is carefully excluded from the description of
the lots conveyed. It does not appear what, if any, use or acts
of ownership have been exercised over the strip of land of 276
feet in length and 66 feet in width, now claimed by plaintiffs,
since the sale of blocks 15 and 16 to Cowan, in 1892, until the
institution of this action, in 1904. Conceding the facts found
by his Honor, what, if any, effect did the conduct of plaintiffs
in respect to the sale of the property have upon the right of the
city to use, whenever the public necessity demanded, the *locus
in quo* as a street? In *Shea v. Ottumwa,* 67 Iowa, 39, it appeared
that lots had been sold according to a map "dividing the prop-
erty into town lots and dedicating the streets to public use."
Thirty years thereafter the city proposed to open the streets.
The map was not recorded as the statute required. Plaintiff
sought to recover damages from the city for entering upon and
grading the streets. *Beck, C. J.,* after saying that the execution
of deeds "bounded according to the description of the plat"
would establish the *animus dedicandi* sufficient to establish a
way or street, added: "But it is urged that there was no accept-
ance of the dedication by the public, or by the city for the
public, for more than thirty years after the dedication, when
the street was graded. It is shown that the street remained
unenclosed, that the land was rough and hilly, and for that
reason it was used but little by the public. It appears that
when the wants of the public demanded it the city proceeded
to grade the street at the point in dispute. It would not do to
hold that city streets dedicated to the public over hilly, rough
land would revert to the dedicator if they were not improved and
used by the public until the wants of the public travel demanded
it. * * * They have not been used for the reason that,
until graded, they are incapable of use. The dedication will be
presumed to have contemplated this state of things and imposed
no condition on the public to use the streets until the public
wants demanded and secured their improvement." *Bennett, J.,*
in *Schneider v. Jacob,* 86 Ky., 101, says: "These principles
apply primarily in the interest of purchasers of lots who invest

their money upon the faith of the assurances of the seller that the streets and alleys which are defined in the plat and which are called for in the deeds of conveyance are dedicated to the use of the purchasers and to the public. The purchasers invest their money with the assurance that they shall have all the advantages arising from the streets and alleys, as defined and delineated in the plat or plan of the newly created town, and that these streets and alleys, as soon as lots are purchased, with clear reference to them, become irrevocably dedicated, not only to the personal convenience and necessities of the purchasers, but to the use of the public; and although they may not be actually opened by the authority of the city or town, although they may be repudiated as public thoroughfares by the city, as in this case, and different streets and alleys opened up in their stead, yet the purchasers of the lots, with clear reference to the streets and alleys as defined in the map or plan, are entitled, as between them and the seller, to the benefits of the dedication. * * * Where the land is laid out in town lots, with streets, and the owner sells a lot which fronts on a street, and the deed calls for the street as the front boundary of the lot, he receives a full consideration for the street in the increased value of the lot." So, in *Sherer v. Jasper,* 93 Ala., 536, it is said: "The general rule that where a landowner lays off his land into blocks and lots, setting apart and designating certain portions as streets, with a view of establishing a town, a sale of lots with reference to a map defining and delineating the streets is a complete dedication thereof to the use of the purchasers and the public—governs when the proprietor of land sells and conveys lots in conformity and with reference to a city map on which his land is so laid off. Such sales and conveyances are a recognition and adoption of the maps, and amount to a dedication of the designated street to public use, of which the purchase of lots is an acceptance. It is not necessary that the street should be opened at the time of the sale and conveyance." In *Trustees v. Hoboken,* 33 N. J. L., 13, *Depue, J.,* says: "When, there being a city map on which the land is so laid off, the owner adopts such maps by a reference thereto, his acts will amount to a dedication of the streets." In *Vannotte v. Jones,* 42 N. J. L., 561, the owners

of land as tenants in common filed proceedings for partition, adopting and recognizing a map on which streets had been laid out. Partition was made: *Held,* that the streets were dedicated to public use. In *Derby v. Alling,* 40 Conn., 410, streets were laid out on a map, but not opened, and lots sold, calling for them. *Seymore, C. J.,* said: "The public enters upon a part in the name of the whole, to enjoy the parts as from time to time such enjoyment of them becomes necessary. This is carrying into effect the manifest intent of the grantor and of those for whose benefit the grant is made, and we see no difficulty in allowing this intent to prevail and to call it a dedication *in presenti,* to be carried into effect *in futuro.*" *Henshaw v. Hunting,* 67 Mass., 203; *Mayor v. Canal Co.,* 12 N. J. L., 547; *Wright v. Tokey,* 57 Mass., 290.

The decisions of this Court, while not exactly in point, are in harmony with the uniform current of the authorities cited in holding that a sale of lots in accordance and recognition of a map or plat in which streets are laid out constitutes a dedication of the streets to the use of the purchasers and the public. In *Moose v. Carson,* 104 N. C., 431, the streets were laid out and the lots sold by the town. It was held that the owners of lots were entitled to have them kept open. *Smith v. Goldsboro,* 121 N. C., 350, and *Conrad v. Land Co.,* 126 N. C., 776. In *Collins v. Land Co.,* 128 N. C., 563, the Court held that when the lots were sold and conveyed by referring to a plat in which streets were laid out, the map became a part of the deed, as if it were written therein. In *Hughes v. Clark,* 134 N. C., 457, it was held that where the deeds conveying the lots referred to a map, the purchasers' rights were not affected by the acceptance or nonacceptance of the dedication. It was held in that case that the town authorities could not, as against an abutting owner, by resolution or ordinance, narrow the street as laid out on the plat or map. The more recent decisions of this Court cite these cases with approval. The intention to dedicate the land covered by the streets, as indicated on the map, is manifested in the most unmistakable manner. For what other purpose did the parties in the partition proceedings carefully exclude the streets from the description in the deeds? It cannot

be contended, with reason, that they intended to sell off town lots and hold the strips of 66 feet between them for the purpose of preventing ingress and egress to the lots. Without the streets, lots of 66 feet width were of little value. It will be observed, by referring to the map, that the blocks are 396 feet in width and are divided into six lots making each 66 feet wide. Having sold the lots by reference to the official city map, the dedication is complete and irrevocable. Elliott on Roads and Streets, 131. The dedication is not confined to a mere private way or easement. It is to the public, to be enjoyed under the control of the city authorities, who have charge of the streets. *Trustees v. Hoboken, supra.* The attempt to limit the dedication made in 1892 by the use of the words "so-called Wright Street" cannot affect the rights of the city or the owners of the lots.

Upon the facts found by his Honor judgment should have been rendered for defendants. The legal title of Wright Street is in plaintiffs, subject to an easement in the city to use the land as and for a public street, to be opened and subjected to regulation as the growth of the city demands. The defendant corporation, in using it in the manner described in the complaint, did not commit a trespass. The judgment will be set aside and judgment entered in the Superior Court of New Hanover that defendants go without day, etc. Let this be certified.

Reversed.